UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED TREE INVESTMENTS, LLC,<br><br>                        Plaintiff,<br><br>-against-<br><br>PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO, S.A.,<br>                        Defendants. | Docket No. 1:19-cv-02523<br>(related to 1:19-cv-02519) |

**PLAINTIFF RED TREE'S MOTION TO LIFT STAY**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Stephen A. Broome       Daniel Salinas-Serrano (*pro hac vice*)
Susheel Kirpalani
Victor Noskov              1300 I Street, N.W.
Anna Deknatel             Suite 900
                                     Washington, D.C.
51 Madison Avenue     20005
22nd Floor                 (202) 538-8132
New York, New York
10010-1601
(212) 849-7000

*Attorneys for Red Tree Investments, LLC*

Plaintiff Red Tree Investments LLC ("Red Tree") respectfully moves for the entry of an Order lifting the stay imposed by the Court's May 3, 2019 order, (Dkt. No. 33, the "Stay Order"), and setting a schedule for Defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo") (together with PDVSA, "Defendants") to respond to Red Tree's pending summary judgment motion.

## FACTUAL BACKGROUND

It has been 171 days since Red Tree initiated this proceeding in New York Supreme Court on February 15, 2019, by filing a Motion for Summary Judgment in Lieu of Complaint (the "Summary Judgment Motion") pursuant to CPLR 3213, and 94 days since May 3, 2019, the day the Court stayed this litigation.[1] At the time, news reports from Venezuela indicated that the "slow-simmering political crisis that [had] gripped Venezuela for months appeared to be coming to a head… as opposition politicians issued a direct challenge to the authority of President Nicolas Maduro."[2] The Defendants' Memorandum of Law In Support Of Defendants' Motion for Stay (Dkt. No. 11, the "Stay MOL"), told a similar story: while Defendants did not have access to "all documents and information necessary to defend themselves," a "*limited*" stay was necessary to allow the Guaidó government time to "evaluate the issues in this case and determine appropriate steps to respond to the claims asserted against Defendants by Red Tree." Stay MOL at 7 (emphasis added). Such a limited stay was appropriate, according to the Defendants,

---

[1] As the Court is aware, Red Tree's enforcement of its rights under the agreement at issue here already has been substantially delayed. After missing the March 11, 2019 deadline to file their response to the Summary Judgment Motion and failing to appear on the Motion's return date in New York State Court, Defendants removed this action on March 21, 2019. (Dkt. No 5.) On March 27, 2019, Defendants sought a stay of the case, (Dkt. No. 10, the "Stay Motion," Dkt. 11, the "Stay MOL"), which the Court granted on May 3, 2019.

[2] Megan Specia, "Five Things You Need to Know to Understand Venezuela's Crisis," *The New York Times* (online, May 3, 2019), *available at* https://www.nytimes.com/2019/05/03/world/americas/venezuela-crisis-facts.html.

because "prejudice to Red Tree [would] be minimal" and "[t]he Guaidó government [was] working toward the goal of a full transition of power." Stay MOL at 7 (arguing that a stay of 120 days was necessary to "allow the transition to occur").

The Court agreed. In doing so, the Court gave weight to the "current political environment in Venezuela" and held that the Defendants' apparent inability to access relevant documents in light of this political environment "outweigh [Red Tree]'s interest in avoiding delay." Stay Order at 1-2. Over a few days the end of April and beginning of May, protesters clashed in the streets of Caracas, and many anticipated a military uprising that would effectuate President Guiadó's transition to power.[3] Instead, since May, it appears that President Guiadó's momentum has stalled and the political environment in Venezuela remains uncertain. Meanwhile, sovereign creditors of PDVSA are aggressively moving to claim rights to PDVSA's assets, threatening to further prejudice Red Tree's ability to make effective the judgment it seeks through this action.

Most recently, on July 29, 2019, the Third Circuit upheld a decision by the District Court in Delaware, allowing Crystallex International Corporation, a Canadian gold mining company with an arbitral award against Venezuela, to proceed to attach the assets of PDVSA Defendants to respond to the Motion within 15 days—specifically PDVSA's shares in Petróleos de Venezuela Holding, Inc. ("PDVH"), ultimately aiming to reach assets of CITGO, PDVSA's sole tangible assets in the United States.[4] *See Crystallex International Corp. v. Bolivarian Republic*

---

[3] Anthony Faiola, Mariana Zuniga, and Mary Beth Sheridan, "Guaidó's supporters and Maduro's forces clash in second day of Venezuelan protests," *The Washington Post*, (online, May 1, 2019), *available at* https://www.washingtonpost.com/world/the_americas/venezuela-guaido-maduro-live-updates/2019/05/01/20553c6e-67ab-11e9-a698-2a8f808c9cfb_story.html?utm_term=.d3ba6160de16.

[4] PDVH is the holding company for CITGO Holding, Inc., which in turn owns CITGO Petroleum Corp. ("CITGO"), which has tangible assets in the United States.

*of Venezuela*, 18-CV-2797, Doc. No. 003113304271 (3d. Cir. July 29, 2019).  Crystallex will presumably now seek to enforce its attachment order by moving as expeditiously as possible towards a foreclosure sale of the PDVH shares—the same shares against which Red Tree should be entitled to satisfy any judgment in this case.

Meanwhile, multiple other Venezuelan creditors *are* moving closer towards judgments against PDVSA, which they can then enforce, potentially to Red Tree's detriment.  For example, just last week, another holder of an arbitral award against Venezuela, OI European Group, moved in the District of Columbia for leave to register a judgment obtained in May, informing the court of its intention to attach PDVSA's assets in the District of Delaware.  *See OI European Group B.V. v. Bolivarian Republic of Venezuela*, 16-CV-1533, Dkt. No. 89 (D.D.C. July 25, 2019).  Moreover, bondholders asserting claims against Venezuela in the Southern District of New York also have been given leave to proceed to discovery and summary judgment.  *See Casa Express Corp. v. Bolivarian Republic of Venezuela*, 18-CV-11940, Dkt. No. 45 (S.D.N.Y. July 8, 2019) (order directing discovery to be completed by November 5, 2019 and for plaintiff to file a motion for summary judgment by December 5, 2019); *Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*, 19-CV-03123, Dkt. No. 25 (S.D.N.Y. July 8, 2019) (order directing discovery to be completed by November 5, 2019 and for plaintiff to file a motion for summary judgment by December 5, 2019).

And, perhaps most fundamentally, the Guaidó government itself has begun taking steps towards restructuring Venezuela's debt (including the debt of Venezuelan state entities like PDVSA), in a manner that seeks to directly prejudice Red Tree's rights by destroying its structural priority vis-à-vis creditors of Venezuela.  Specifically, on July 1, 2019, the Office of the Special Attorney General, Jose Ignacio Hernandez, appointed by President Guaidó to lead

and coordinate all litigations on behalf of Venezuela and its state-owned entities outside of Venezuela, issued a memorandum setting out guidelines for the renegotiation of public debt held by Venezuela and its "public sector," including PDVSA.  (*See* Exhibit A, Guidelines For The Renegotiation of the Chávez/Maduro Era Legacy Public External Debt.)  The memorandum explains that the Guaidó administration will seek to renegotiate all claims against Venezuela, PDVSA, and other public state entities.  While the memorandum is framed as "negotiation," it specifically proposes appointment of a "debt reconciliation agent. . . to determine the amounts of each of [the] claims for the purposes of the renegotiation."  As proposed, the debt reconciliation agent would operate outside set judicial processes and in violation of agreements as to jurisdiction and governing law.  Seeking to dissuade parties like Red Tree from defending their rights, PDVSA further states that the debt reconciliation agent also would ignore past and future rulings of US courts as to priority or attachment ("claims in foreign currency will not be treated differently . . . regardless of whether the claim has been the subject of a judicial decision").  Parties like Red Tree specifically bargained for the right to seek recovery from PDVSA directly (including by seeking attachment of PDVSA's PDVH shares and any other attachable PDVSA assets) upon a default.  PDVSA should not be permitted to continue forestalling adjudication of Red Tree's claims while it and Venezuela design and implement plans to disregard their creditors' rights and priorities.  Under these exceptional circumstances, justice delayed may well be justice denied.

In light of these developments, PDVSA cannot be allowed to freeze its own creditors from enforcing their rights based on nothing more than its bare assertion that it is unable to litigate.  The lack of any meaningful progress by the Guaidó administration towards securing power contrasted sharply by the results reached by other creditors while this case has been stayed,

along with Venezuela's publicly stated intention to subject its and PDVSA's creditors to an unprecedented reconciliation process, makes it imperative that Red Tree be allowed to proceed to enforce PDVSA's payment obligations and protect its rights as direct creditor of PDVSA without further delay.

## ARGUMENT

Red Tree respectfully requests that the Court lift the stay and set a deadline for Defendants to respond to the Motion for Summary Judgment. That relief is appropriate under the circumstances, as the Third Circuit has determined that Crystallex can effectuate its attachment of PDVSA's assets, other creditors have taken steps towards securing judgments against PDVSA, and the Guaidó administration has indicated that it may take steps to restructure public debt and, in so doing, seek to alter the rights of creditors such as Red Tree before it has the opportunity to obtain judgment.

A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal citations omitted); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96–97 (2d Cir. 2012) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163 (1936)). A District Court has "broad discretion in deciding whether to lift the stay, which arises out of its inherent power." *Glenclova Inv. Co. v. Trans-Res., Inc.*, No. 08-CV-7140, 2013 WL 6003512, at *3 (S.D.N.Y. Nov. 12, 2013) (citing *Landis*, 299 U.S. at 254 ); *see also Smolen v. Brauer*, 177 F. Supp. 3d 797, 802–03 (W.D.N.Y. 2016) (writing that "[t]he decision to grant or lift a stay is within the broad discretion of the court" and holding that "[t]he reason the Court

originally imposed and continued the stay of this action is no longer compelling") (citing *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 1650 (1997)); *City of New York v. B.L. Jennings, Inc.*, 219 F.R.D. 255, 256 (E.D.N.Y. 2004) (same).

It is well within this Court's discretion to end the stay and require the parties to complete briefing on Red Tree's Motion for Summary Judgment. And the Court should exercise that discretion to lift the stay under present circumstances. The justifications underlying the granting of Defendants' request are no longer sufficient to outweigh the imminent prejudice to Red Tree's rights. In seeking a stay, Defendants requested a "limited stay of these proceedings," and represented that "the Guaidó government currently does not have access to the personnel who would be most knowledgeable about the claims at issue, and therefore is unable, until a full transition occurs, to respond to the claims."[5] (Stay Motion, 1.) The Court found a "judicial interest in favor of resolving cases on their merits." (Stay Order, 2.) Given the "current political environment in Venezuela" at that time, the Court concluded that "these interests outweigh Plaintiff's interest in avoiding delay." (Stay Order, 2.)

Today, the path towards and likelihood of "a full transition"—however defined—is no more discernible than when Red Tree commenced this action 172 days ago or when the Court stayed it 94 days ago. And Defendants cannot articulate how 26 additional days will change this reality without resorting to rank speculation.

---

[5] According to Defendants, a stay was necessary to "obtain the necessary documents and testimony required to defend the merits of the case." (Stay Motion, 6). In the Stay Order, the Court "credit[ed] Defendants assertion that they 'are not in a position to provide their counsel with sufficient information to respond to the allegations of [Plaintiff] in this action, or obtain the necessary documents and testimony required to defend the merits of the case.'" (Dkt. No. 33, the "Stay Order," 1-2.) As Defendants themselves acknowledged when seeking the stay, "If the transition occurs before the expiration of 120 days, Defendants will advise Red Tree and the Court that the stay is no longer warranted." (Stay Motion, 7.) Defendants further stated they were "prepared to … advise the Court of any event that would make the requested stay unnecessary." (Stay Reply, 2-3.)

Red Tree, on the other hand, already has been prejudiced by the passage of time and risks seeing its rights to payment from Defendants crippled if the case remains stayed.  Unless it is allowed to promptly move this action towards judgment, Red Tree may be precluded from effecting the judgment to which it is entitled, either by efforts of other Venezuela and PDVSA creditors to reach and liquidate assets to which Red Tree has a claim, or by efforts of the Venezuelan government to unilaterally restructure the rights of creditors without regard to the identity of their respective debtors or the seniority of their claims.  Five months since the filing of the case, it is now necessary and appropriate for the Court to allow it to move forward by lifting the stay and directing Defendants to respond to the Motion within a period not to exceed 20 days, the amount of time originally provided to them by the CPLR, in order to avoid exacerbating that prejudice.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## CONCLUSION

WHEREFORE, Red Tree respectfully requests that the Court enter an Order lifting the stay of this proceeding, directing Defendants to respond to Red Tree's Motion for Summary Judgment within 20 days, establishing a schedule for full briefing of the Motion for Summary Judgment, and awarding such other relief as the Court considers appropriate.

Respectfully submitted,

DATED: New York, New York
    August 5, 2019

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Stephen A. Broome*      */s/ Daniel Salinas-Serrano*

| | |
|---|---|
| Stephen A. Broome | Daniel Salinas-Serrano |
| Susheel Kirpalani | (*pro hac vice*) |
| Victor Noskov | 1300 I Street, N.W. |
| Anna Deknatel | Suite 900 |
| 51 Madison Avenue, | Washington, D.C. 20005 |
| 22nd Floor | Tel: 202-538-8132 |
| New York, New York | |
| 10010-1601 | |
| (212) 849-7000 | |

*Attorneys for Red Tree Investments, LLC*