UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED TREE INVESTMENTS, LLC,<br><br>                      Plaintiff,<br><br>        v.<br><br>PETRÓLEOS DE VENEZUELA, S.A. and<br>PDVSA PETRÓLEO, S.A.,<br><br>                      Defendants. | Nos. 19 Civ. 2519 and 19 Civ. 2523<br><br>Hon. P. Kevin Castel |

### RED TREE'S MEMORANDUM OF LAW IN SUPPORT OF
### ITS MOTION FOR FEES AND EXPENSES

Steven F. Molo
Justin M. Ellis
Lauren F. Dayton
Mark W. Kelley
MoloLamken LLP
430 Park Avenue, 6th Floor
New York, NY  10022
Tel.: (212) 607-8170
Fax: (212) 607-8161
smolo@mololamken.com

Elizabeth K. Clarke (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL  60654
Tel.: (312) 450-6700
Fax: (312) 450-6701

*Counsel for Plaintiff Red Tree Investments, LLC*

**TABLE OF CONTENTS**

                                                                         **Page**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................. 1

I.     Red Tree's Motions for Summary Judgment and Defendants' Rule 56(d) Motions .......... 1

II.    Discovery and Summary Judgment Briefing ..................................................................... 4

ARGUMENT .................................................................................................................................. 5

I.     The Relevant Contracts Entitle Red Tree to Fees and Costs ............................................. 6

II.    Counsel Achieved Complete Success on Red Tree's Claims ........................................... 7

III.   The Requested Rates Are Presumptively Reasonable ...................................................... 7

IV.   The Hours Charged in This Case Are Reasonable .......................................................... 11

V.    Red Tree's Out-of-Pocket Expenses Are Reasonable ..................................................... 13

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*,
  No. 04 Civ. 3531, 2020 WL 91504 (S.D.N.Y. Jan. 8, 2020) ....................................................... 9

*Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*,
  No. 09 Civ. 5087, 2013 WL 4615404 (S.D.N.Y. Aug. 29, 2013) ............................................ 13

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2008) ..................................................................................................... 12

*Cardwell v. Davis Polk & Wardwell LLP*,
  No. 19 Civ. 10256, 2021 WL 4392278 (S.D.N.Y. Sept. 23, 2021) ............................................ 8

*Cruz v. Local Union Number 3 of Int'l Brotherhood of Elec. Workers*,
  34 F.3d 1148 (2d Cir. 1994) ..................................................................................................... 11

*Danaher Corp. v. Travelers Indem. Co.*,
  No. 10 Civ. 121, 2014 WL 4898754 (S.D.N.Y. Sept. 30, 2014) ......................................... 7, 11

*F.H. Krear & Co. v. Nineteen Named Trs.*,
  810 F.2d 1250 (2d Cir. 1987) ..................................................................................................... 5

*Farrar v. Hobby*,
  506 U.S. 103 (1992) .................................................................................................................... 7

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .................................................................................................................... 7

*HSH Nordbank AG N.Y. Branch v. Swerdlow*,
  No. 08 Civ. 6131, 2010 WL 1141145 (S.D.N.Y. Mar. 24, 2010) ........................................... 13

*In re Karp*,
  145 A.D.2d 208 (1st Dep't 1989) ............................................................................................. 11

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
  No. 16 Civ. 8103, 2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) .............................................. 8

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) .................................................................................................................. 11

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) .................................................................................................................. 11

*Regeneron Pharms., Inc. v. Merus N.V.*,
   No. 14 Civ. 1650, 2018 WL 3425013 (S.D.N.Y. June 25, 2018)..............................................9

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017).......................................................................................................8

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
   977 F.2d 47 (2d Cir. 1992).......................................................................................................11

*Samms v. Abrams*,
   198 F. Supp. 3d 311 (S.D.N.Y. 2016)......................................................................................12

*Simmons v. N.Y.C. Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009).................................................................................................7, 11

*Star Ins. Co. v. A&J Constr. of N.Y., Inc.*,
   No. 15 Civ. 8798, 2018 WL 6177857 (S.D.N.Y. Nov. 26, 2018) .............................................5

*Sykes v. RFD Third Ave. I Assocs., LLC*,
   39 A.D.3d 279 (1st Dep't 2007) ................................................................................................7

*Tessemae's LLC v. Atlantis Cap. LLC*,
   No. 18 Civ. 4902, 2019 WL 2635956 (S.D.N.Y. June 27, 2019).............................................8

*Themis Cap. v. Democratic Republic of Congo*,
   No. 09 Civ. 1652, 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ..............................................9

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
   699 F. App'x 8 (2d Cir. 2017) .................................................................................................11

*U.S. Football League v. Nat'l Football League*,
   887 F.2d 408 (2d Cir. 1989).....................................................................................................13

*UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*,
   No. 20 Civ. 2043, 2021 WL 3292519 (S.D.N.Y. Aug. 2, 2021) ..............................................8

*Vaigasi v. Solow Mgmt. Corp.*,
   No. 11 Civ. 5088, 2017 WL 3868990 (S.D.N.Y. Sept. 5, 2017)...............................................9

*Valvo v. City of New York*,
   No. 13 Civ. 6562, 2018 WL 3999011 (E.D.N.Y. Jan. 23, 2018) ...........................................12

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
   No. 16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018).........................................8, 9

*P.J. ex rel. W.J. v. Conn. State Bd. of Educ.*,
   931 F.3d 156 (2d Cir. 2019).....................................................................................................11

*Wells Fargo Bank, NA v. Konover*,
  No. 05 Civ. 1924, 2014 WL 3908596 (D. Conn. Aug. 8, 2014) ..............................................12

### OTHER AUTHORITIES

Fed. R. Civ. P. 56(d) ................................................................................................................2, 3, 4

Debra Cassens Weiss, *At least 3 BigLaw firms charge more than $1K per hour for top associates*, ABA Journal (May 27, 2020), https://bit.ly/2GZFv5U......................................9

Martha Neil, *Top partner billing rates at BigLaw firms approach $1,500 per hour*, ABA Journal (Feb. 8, 2016), https://bit.ly/2FsBkim..........................................................9

Samantha Stokes, *Will Billing Rates for Elite Firms Rise More in 2020?*,
  The American Lawyer (July 30, 2020), https://bit.ly/3roGKyM..............................................9

## INTRODUCTION

The three contracts at issue require defendant Petróleos de Venezuela, S.A. ("PDVSA") to pay Red Tree's legal fees and costs incurred in litigating this action. They also require defendant PDVSA Petróleo, S.A. ("Petróleo") to guarantee that obligation. Red Tree's attorneys' fees are presumptively reasonable because they were reviewed and agreed to by sophisticated clients. Moreover, those fees are amply justified considering that Red Tree achieved complete success in this case. They are in line with market conditions in this District and with the substantial experience, skill, and efficiency that counsel brought to this matter. And they are proportional given the complexity of this case and the amount at stake. The Court should award Red Tree's requested fees and expenses in full.

## BACKGROUND

Red Tree has made every effort to expedite these cases. It moved as quickly as possible to seek a resolution of its claims and to provide Defendants all discovery they had asked for. When two administrative glitches – perhaps COVID-related – stalled these cases, Red Tree took repeated steps to fix those issues and move the cases forward. And when those issues were eventually resolved, Red Tree completed discovery and summary judgment briefing on an accelerated basis. As a result, Red Tree prevailed in full and received judgments of nearly $250 million.

### I. RED TREE'S MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANTS' RULE 56(D) MOTIONS

To enforce its rights under the contracts at issue, Red Tree at first engaged three firms. Red Tree hired the nationally prominent litigation firm Quinn Emanuel Urquhart & Sullivan, LLP as principal trial counsel. Declaration of Joshua Weisser ("Weisser Decl.") ¶¶ 4-9. Because Red Tree planned to litigate in New York state court, it also retained Ganfer Shore Leeds &

Zauderer LLP, a renowned litigation boutique, to provide advice about New York state procedure. *Id*. ¶¶ 10-13. And because this suit implicated OFAC sanctions policies, Red Tree also engaged Peter Harrell, a former top U.S. Department of State official with extensive sanctions experience, to advise on OFAC regulations and to prepare license applications seeking OFAC's permission to enforce any judgments Red Tree might receive. *Id*. ¶¶ 14-15, 26.

Red Tree filed these actions in February 2019 in New York state court as motions for summary judgment in lieu of complaint. Dkt. 1/1.[1] Defendants removed the actions to this Court a month later. *Id.* The cases were assigned to the Honorable Alison J. Nathan.

From the beginning of the litigation, Defendants claimed that they lacked access to the "personnel and documents" needed to defend these actions. Dkt. 10/11 at 6. Because of that claim, the Court first stayed the action at Defendants' request and then, after lifting the stay, deferred decision on Red Tree's summary judgment motions so Defendants could move for more discovery under Federal Rule 56(d). Dkt. 49/49; Dkt. 57/58 at 6; *see* Fed. R. Civ. P. 56(d). Defendants then moved for three broad categories of discovery about the contracts and their assignment to Red Tree.[2] To expedite matters and to limit costly motion practice, Red Tree voluntarily produced to Defendants before the Rule 56(d) motions were fully briefed two of the three categories of discovery they had asked for. *See* Dkt. 68-1/69-1.

---

[1] Unless otherwise indicated, this brief cites docket numbers from the two cases as "Dkt. #/#," in which the first docket number refers to the entry in No. 19 Civ. 2519, followed by the entry in No. 19 Civ. 2523.

[2] *See* Dkt. 65/66 at 7 (seeking (1) "[c]orrespondence and documents exchanged between any initial Noteholder or successor Noteholder and PDVSA or Petróleo concerning the terms and performance of the Note Agreements or Notes, including payment," (2) "[c]orrespondence and documents exchanged between Red Tree and any initial Noteholder or successor Noteholder concerning the assignment or transfer of the Note Agreements or Notes, including payment," and (3) "[c]orrespondence and documents exchanged between Red Tree and PDVSA or Petróleo concerning the terms and performance of the Note Agreements or Notes, including payment").

Unfortunately, two administrative glitches delayed the resolution of Defendants' Rule 56(d) motions for well over a year. First, although the cases were no longer stayed, they remained incorrectly designated as "STAYED" on CM/ECF. Dkt. 74/75. In August 2020, after Red Tree raised the issue, Dkt. 74/75, the Court ordered the cases' dockets be updated accordingly, Dkt. 75/76, but did not decide Defendants' motions. Second, around the same time Red Tree raised the first issue, the motions were marked as "terminated" in the Court's internal system "before the Court ruled on them." Dkt. 99/100 at 4. Red Tree did not receive notice that the motions were marked "terminated" at the time, and was later told by the Clerk of Court that such notation would not have been visible on the Court's public docket. *See* Dkt. 97/98.

In the meantime, Red Tree continued its work to move the cases forward. Weisser Decl. ¶34. In August 2020, Red Tree engaged new trial counsel, MoloLamken LLP, to take over the case from Quinn Emmanuel. *Id.* ¶16. The next month, Red Tree reviewed thousands of documents and produced the rest of the discovery Defendants had asked for to voluntarily resolve Defendants' Rule 56(d) motions. Dkt. 84/85. Red Tree also moved to intervene in a parallel creditor case against the same defendants to modify the protective order there so Defendants could obtain the discovery they had sought in this action. *See Dresser-Rand Co. v. Petróleos de Venezuela, S.A.*, No. 19 Civ. 2689, Dkt. 104 (S.D.N.Y. Jan. 25, 2021).

In March 2021, Red Tree learned from the Clerk of Court that the Rule 56(d) motions had been erroneously marked as "terminated." Dkt. 94/95. Red Tree immediately notified the Court by filing a letter and leaving a voicemail message with chambers. *See id*. When additional efforts to bring the issue to the Court's attention did not succeed, *see* Dkt. 98/99, Red Tree, as a last resort, petitioned for mandamus asking for the Second Circuit's assistance, *see* Weisser Decl. ¶31. Days later, the Court granted the Rule 56(d) motions in June 2021 and ordered the parties to complete discovery on an accelerated schedule. Dkt. 99/100.

3

## II.   DISCOVERY AND SUMMARY JUDGMENT BRIEFING

Once the Court granted Defendants' Rule 56(d) motions, Defendants sought substantial additional discovery. Among other requests, Defendants pursued additional documents from Red Tree, a Red Tree corporate deposition, and documents and testimony from several third parties, including discovery from third parties located in Italy and Dominica through letters rogatory. Weisser Decl. ¶32; *see also* Dkt. 101/101 at 4-5; Dkt. 104/105. Red Tree opposed those requests. *See* Dkt. 101/101 at 2-3; Dkt. 105/106. When the Court granted Defendants' requests for additional discovery, Red Tree moved to complete that discovery as quickly as possible. Red Tree produced additional documents on an expedited basis and prepared its corporate witness for deposition within weeks. Weisser Decl. ¶32. Red Tree also prepared for and attended Defendants' deposition of a third-party witness, reviewed discovery from third-party banks, and opposed Defendants' requests for additional third-party discovery. *Id.* As a result, the parties completed all discovery within one month and finished briefing Red Tree's summary judgment motions by August 2021. *See* Dkt. 124/125.

While Red Tree awaited the Court's ruling on its summary judgment motion, Red Tree prepared to execute on its expected judgments. Weisser Decl. ¶¶34-35. Given the progress towards a forced sale of PDVSA's major U.S. asset, Citgo, Red Tree believed it would need to act quickly to recover on any judgment. *Id.* ¶35. As a result, Red Tree's counsel prepared a motion to attach PDVSA's shares of PDV Holding, Inc., which owns Citgo. *Id.*

In December 2021, both cases were transferred from Judge Nathan's docket to this Court. Within two weeks, the Court granted summary judgment to Red Tree. Dkt. 136/137. The Court then entered judgment in January 2022 for Red Tree in the full amount of unpaid principal and accrued interest, for a total amount of over $246 million. Dkt. 143/143.

**ARGUMENT**

Under New York law, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987).[3] In deciding whether fees claimed are reasonable, the court uses a "lodestar" method, "in which the hours reasonably spent by counsel, as determined by the Court, [are] multiplied by the reasonable hourly rate." *Id.* at 1263 (internal quotation marks omitted). "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved." *Id.* (internal quotation marks omitted). "'[T]here is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors.'" *Star Ins. Co. v. A&J Constr. of N.Y., Inc.*, No. 15 Civ. 8798, 2018 WL 6177857, at *3 (S.D.N.Y. Nov. 26, 2018).

Red Tree's fee request easily satisfies those standards. The three contracts here unambiguously require Defendants to pay Red Tree its litigation costs and expenses. As described in the supporting Weisser Declaration, Red Tree requests $3,177,967.00 in fees and $55,655.42 in out-of-pocket expenses. Weisser Decl. ¶¶ 45, 48 & Ex. J. Those fees and costs are dwarfed by the judgments totaling over $246 million that counsel obtained. Counsel achieved that result in a

---

[3] New York fee-award standards control because the contracts at issue are governed by New York law. *See F.H. Krear*, 810 F.2d at 1263 (applying New York law, "which the Contracts provided was to govern," to fee determination).

case that presented novel legal issues, unique strategic considerations, and unusual logistical challenges. And counsel's fees match prevailing market rates that sophisticated litigants regularly pay in cases of this nature.

## I. THE RELEVANT CONTRACTS ENTITLE RED TREE TO FEES AND COSTS

In each of the three contracts here, PDVSA promised to pay "all out-of-pocket expenses incurred . . . in connection with the enforcement or protection of" Red Tree's "rights in connection with" those contracts, including "the fees, charges and disbursements of any counsel." No. 19 Civ. 2519, Dkt. 25-4 ("2015 Note Agreement") § 9.05; No. 19 Civ. 2519, Dkt. 25-8, ("2016 Note Agreement") § 9.05; No. 19 Civ. 2523, Dkt. 26-4, ("2016 Credit Agreement") § 11.03(a). Petróleo, meanwhile, "unconditionally guarantee[d]" that obligation, promising to pay "all court costs and attorneys' and paralegals' fees . . . and expenses paid or incurred" by Red Tree "in endeavoring to collect . . . from, or prosecuting any action against," PDVSA. 2015 Note Agreement § 6.01; 2016 Note Agreement § 6.01; 2016 Credit Agreement § 10.01. Defendants admit that they made that promise. No. 19 Civ. 2519, Dkt. 123 ¶ 32; No. 19 Civ. 2519, Dkt. 124 ¶ 27. They also cannot dispute that the expenses Red Tree incurred in litigating these actions were expenses incurred "in connection with the enforcement or protection of" Red Tree's "rights in connection with" with the Notes and the Credit Agreement, and were incurred "in endeavoring to collect . . . from, or prosecuting" an "action against," PDVSA. *See* 2015 Note Agreement §§ 9.05, 6.01; 2016 Note Agreement §§ 9.05, 6.01; 2016 Credit Agreement §§ 11.03(a), 10.01. The contracts therefore require Defendants to pay Red Tree's fees and expenses.[4]

---

[4] Unlike some contractual fee-shifting clauses, these contracts do not limit fees to "prevailing parties" in litigation. In any event, Red Tree is the prevailing party. It won on all its claims and

6

## II.     COUNSEL ACHIEVED COMPLETE SUCCESS ON RED TREE'S CLAIMS

"The most critical factor in determining a fee award's reasonableness is the degree of success obtained[.]" *Farrar v. Hobby*, 506 U.S. 103, 103 (1992); *see also Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). That factor, by itself, shows that the requested fees and expenses here are reasonable. At a cost of only $3.18 million in fees, counsel obtained a judgment of over $246 million that recovered all unpaid principal and accrued interest Red Tree sought.

Counsel achieved that result despite significant procedural challenges. *See* pp. 3-4, *supra*. Counsel also confronted complex and novel legal questions. PDVSA is the instrumentality of a foreign sovereign, Venezuela, raising issues about sovereign immunity and OFAC sanctions. Defendants also pursued a fact-intensive impossibility defense based on how banks had purportedly refused to process PDVSA's payments on this debt because of sanctions risks. Meanwhile, Red Tree also had to prepare to enforce its judgments in the context of a race among creditors over PDVSA's limited assets. *See* Weisser Decl. ¶23. Those facts reinforce the substantial success counsel achieved by obtaining judgment on Red Tree's claims in full.

## III.    THE REQUESTED RATES ARE PRESUMPTIVELY REASONABLE

The hourly rates charged by counsel are also reasonable. A fee that a "reasonable, paying client would be willing to pay" is "presumptively reasonable" because "such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal quotation marks omitted); *see also Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 121, 2014 WL 4898754, at *2 (S.D.N.Y.

---

was granted the full judgments it asked for, including all unpaid principal, pre-judgment default interest, and post-judgment interest. *See* Dkt. 136/137; 143/143. That result easily meets the standard for "prevailing" under New York law. *See Sykes v. RFD Third Ave. I Assocs., LLC*, 39 A.D.3d 279, 279 (1st Dep't 2007) (in deciding whether a party has "prevailed," courts consider the "'true scope' of the dispute litigated and what was achieved within that scope").

Sept. 30, 2014) ("'[T]he amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate.'" (citation omitted)).  Red Tree is affiliated with Contrarian Capital Management, L.L.C., a sophisticated investment manager which regularly retains counsel for complex litigation matters in this District and elsewhere.  Joshua Weisser, a managing director at Contrarian with extensive experience in hiring and supervising litigation counsel for complex commercial and distressed-debt disputes, hired counsel, negotiated and agreed to their rates, and reviewed and paid every invoice.  Weisser Decl. ¶¶ 38-47, 48-49.

The fees are also well in line with the market for legal services in this District.  When using the lodestar approach, courts "'generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'"  *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017).  In this case, the relevant community is the legal market in New York City.  *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *5 (S.D.N.Y. May 24, 2018).  The fees paid by Red Tree are easily within the market range of fees paid for similar legal services in New York.  Courts in this District have consistently approved similar (or higher) rates for attorneys, recognizing that such rates are not excessive in the New York market.[5]  Those rates are also in line with the rates recently charged

---

[5] *See, e.g.*, *Cardwell v. Davis Polk & Wardwell LLP*, No. 19 Civ. 10256, 2021 WL 4392278, at *2 (S.D.N.Y. Sept. 23, 2021) (adopting, as presumptively reasonable, partner billing rates of $1,485 per hour and associate rates from $598.50 to $958.50 an hour); *UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, No. 20 Civ. 2043, 2021 WL 3292519, at *6 (S.D.N.Y. Aug. 2, 2021) (rates between "$300 and $1,030 per hour" were reasonable in "'a highly contested and complex bankruptcy and commercial litigation among sophisticated commercial actors on a multi-million dollar loan obligation'"); *Tessemae's LLC v. Atlantis Cap. LLC*, No. 18 Civ. 4902, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) (collecting cases and noting that "[c]ourts in this District have determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable"); *Vista*, 2018 WL 3104631, at *6 (awarding partner billing rates between $1,165 and $1,260 and associate rates between $382.50 and $693.75); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16

in other matters by Defendants' able counsel.[6] And media reports show even higher rates are not unusual in similar cases. *See* Debra Cassens Weiss, *At least 3 BigLaw firms charge more than $1K per hour for top associates*, ABA Journal (May 27, 2020), available at https://bit.ly/2GZFv5U; Martha Neil, *Top partner billing rates at BigLaw firms approach $1,500 per hour*, ABA Journal (Feb. 8, 2016), available at https://bit.ly/2FsBkim; Samantha Stokes, *Will Billing Rates for Elite Firms Rise More in 2020?*, The American Lawyer (July 30, 2020), available at https://bit.ly/3roGKyM. The attorney rates here are well within the prevailing market range for New York firms performing comparable work.[7]

Counsel's rates are also reasonable given the experience and qualifications of the attorneys involved. Quinn Emanuel Urquhart & Sullivan, LLP, Red Tree's initial trial counsel, is a leading litigation firm ranked the number one law firm in the United States for commercial litigation by Vault in 2022. Weisser Decl. ¶4. Lead counsel Daniel Salinas-Serrano has over a

---

Civ. 8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (finding reasonable partner rates between $874.60 and $1,048.47 and associate rates between $569.02 and $753.42); *Themis Cap. v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) ("[P]artner billing rates in excess of $1,000 an hour[ ] are by now not uncommon in the context of complex commercial litigation.").

[6] *See, e.g.*, Decl. of E. Desmond Hogan, Schedule A, Dkt. 442-2, *McCollum v. Robeson Cnty.*, No. 15 Civ. 451 (E.D.N.C. filed June 25, 2021) (listing Hogan Lovells LLP 2021 hourly rates ranging from $1,150-$1,230 for partners and from $530-$930 for associates); Third Suppl. Expert Report of J. David Cabello, Ex. C, Dkt. 345-6, *ResMan, LLC v. Karya Prop. Mgmt., LLC*, No. 19 Civ. 402 (E.D. Tex. filed Aug. 12, 2021) (listing Hogan Lovells LLP rates of $1,050-$1,165 for partners and $510-$825 for associates); *see also Regeneron Pharms., Inc. v. Merus N.V.*, No. 14 Civ. 1650, 2018 WL 3425013, at *4 (S.D.N.Y. June 25, 2018) (describing how Hogan Lovells partners "charged between $1,350-$1,750 an hour").

[7] The rates charged for other professional staff are also in line with rates found reasonable within this District. *See, e.g.*, *Vista*, 2018 WL 3104631, at *7 (noting, in 2018, that courts in this District award rates of up to $200 per hour for paralegals); *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2017 WL 3868990, at *4 (S.D.N.Y. Sept. 5, 2017) (same observation in 2017); *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 04 Civ. 3531, 2020 WL 91504, at *5-6 (S.D.N.Y. Jan. 8, 2020) (finding rate of $205.42 reasonable for paralegals).

decade of experience representing clients in complex investment treaty and commercial international arbitration, complex commercial litigation, complex restructurings, and class actions.  *Id.* ¶5 and Ex. A.  He also has deep experience in international disputes, including investor-sovereign disputes, and has been recognized for his work in Latin America.  *Id.*  The second partner on the matter, Stephen A. Broome, is also highly qualified and has extensive experience with complex commercial disputes.  *Id.* ¶6 & Ex. A.  Moreover, the majority of Quinn Emanuel's work was performed by two associates.  *See id.* Ex. F.  That lean staffing is evidence of the reasonableness of Quinn Emanuel's fees.

Red Tree's other lead trial counsel, MoloLamken LLP, is a nationally recognized litigation firm that regularly tries complex commercial cases, cases involving issues of foreign sovereign immunity, and securities litigation matters.  Weisser Decl. ¶16.  Steven F. Molo, a founding partner of MoloLamken, is recognized as one of New York's finest trial lawyers, with a track record of success for clients in some of their most challenging complex matters.  *Id.* ¶17 & Ex. E.  He has been consistently recognized as one of the leading trial lawyers in the United States by *Benchmark Litigation*, *Lawdragon*, and others.  *Id.*  Mr. Molo led this representation.  *Id.*  Justin M. Ellis, a partner of MoloLamken, was responsible for the day-to-day management of this case, including pleadings, motion practice, and discovery.  *Id.* ¶18.  Mr. Ellis has been recognized by *Lawdragon* as one of the top bankruptcy and restructuring lawyers in the United States and has been named repeatedly as a "Rising Star" by *Super Lawyers*.  *Id.* & Ex. E.  And, as with Quinn Emanuel, the bulk of the work on the case was performed by associates, who are also highly qualified for their roles.  *See id.* ¶19 & Ex. E.  Lauren Dayton, the lead associate on the case, was named a New York Rising Star by *Super Lawyers* for 2020-2021.  *Id.* Ex. E.  Every MoloLamken associate, including all of the associates on the case team, has clerked for at least one and usually multiple federal judges.  *See id.* & https://bit.ly/3FYLmBh.

Finally, the fees charged by Ganfer Shore and Peter Harrell are also reasonable. The two Ganfer Shore attorneys who consulted on the case both have decades of experience in complex business litigation in New York courts. Weisser Decl. ¶¶11-12 & Ex. C. Peter Harrell is an expert in U.S. government sanctions, a highly specialized area of law requiring unique expertise. *See id.* ¶ 15 & Ex. D. The rates charged by those attorneys, too, are reasonable in light of their experience and skill.

## IV. THE HOURS CHARGED IN THIS CASE ARE REASONABLE

There is a "strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a 'reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *P.J. ex rel. W.J. v. Conn. State Bd. of Educ.*, 931 F.3d 156, 169 (2d Cir. 2019).[8] Here, where every invoice was reviewed and paid by a sophisticated client, the amount of work done is also presumptively reasonable. *Simmons*, 575 F.3d at 174; *Danaher*, 2014 WL 4898754, at *2; *see also Wells Fargo Bank, NA v. Konover*, No. 05 Civ. 1924, 2014 WL 3908596, at *10 (D. Conn. Aug. 8, 2014), *aff'd sub nom. Wells Fargo Bank, N.A. v. Konover*

---

[8] The amount of hours spent is detailed through summaries of the time billed each month for each attorney or professional staff member engaged on this case. Weisser Decl. Exs. F-J. Those summaries are based upon counsel's contemporaneous fee records, which were included in each firm's bills. Weisser Decl. ¶¶41-44. The Court "may rely on [such] summaries that are based on voluminous contemporaneous records." *In re Tremont Sec. Law, State Law & Ins. Litig.*, 699 F. App'x 8, 18 n.13 (2d Cir. 2017); *see Cruz v. Local Union Number 3 of Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (approving award of fees based on billing summaries based on "contemporaneous entries [made] as the work was completed"). In any event, state law creates the substantive right to fees for Plaintiffs' New York claims, and New York law does not require contemporaneous time records to support a fee application. *See Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *In re Karp*, 145 A.D.2d 208, 216 (1st Dep't 1989).

*Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015). As the attached Declaration of Josh Weisser explains, Red Tree's counsel spent 3,950.7 hours to prosecute this case. Weisser Decl. Ex. J.

The number of hours is also reasonable given the complex legal and factual issues raised in this case. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (among other factors, courts consider the "novelty and difficulty of the questions" involved in the case); *see* pp. 1-5, *supra*. Because Defendants claimed they lacked access to their own documents and records, they demanded substantial discovery from Red Tree and third parties – including parties located abroad – to explore their potential defenses. *See* pp. 2-4, *supra*. Responding to those discovery requests increased the amount of reasonable fees Red Tree had to spend on these otherwise straightforward contract actions. Weisser Decl. ¶32; *see Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (taking into account adversary's litigation tactics in considering reasonableness of fees, given that a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response" (quotation omitted)); *Valvo v. City of New York*, No. 13 Civ. 6562, 2018 WL 3999011, at *4 (E.D.N.Y. Jan. 23, 2018) (similar). And, as explained above, litigating this case to judgment involved tackling unforeseen procedural hurdles. *See* pp. 3-4, *supra*. Red Tree's counsel expended significant effort to resolve those issues, including making two voluntary document productions, moving to intervene in another creditor case, and even filing a mandamus petition when all other efforts failed. *See id.*

Finally, the amount at issue in this case, its timing, the case's resolution, and the quality of opposing counsel's representation also support the fee petition. *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186 n.3 (courts consider the "amount involved"). Red Tree sought and received over $246 million in its judgments. Red Tree litigated this case against sophisticated opposing counsel, Hogan Lovells, a globally prominent firm recognized for its

work in commercial litigation practice and cross-border disputes. *See, e.g.*, https://bit.ly/3Ic8Gga. Red Tree's counsel's success against highly qualified opposing counsel also supports the reasonableness of the fee request.

## V. RED TREE'S OUT-OF-POCKET EXPENSES ARE REASONABLE

The Note Agreements and Credit Agreement also entitle Red Tree to its out-of-pocket expenses incurred in this case. *See* pp. 6-7, *supra*. Red Tree incurred costs totaling $55,645.92 in connection with the enforcement of its rights under those contracts. These costs included legal research costs; court fees and associated expenses; printing costs; and costs related to e-discovery management and hosting. Weisser Decl. Ex. K. Courts in this District routinely award such costs. *See, e.g.*, *Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*, No. 09 Civ. 5087, 2013 WL 4615404, at *1, *7 (S.D.N.Y. Aug. 29, 2013); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, No. 08 Civ. 6131, 2010 WL 1141145 (S.D.N.Y. Mar. 24, 2010), *aff'd sub nom. HSH Nordbank AG N.Y. Branch v. Street*, 421 F. App'x 70 (2d Cir. 2011); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) (awarding out-of-pocket expenses that were "incidental and necessary to the representation" (internal quotation marks omitted)). Considering the results obtained, those out-of-pocket costs are amply reasonable. The Court should award them as well.

## CONCLUSION

The Court should award Red Tree attorneys' fees in the amount of $3,177,967.00 and out-of-pocket expenses in the amount of $55,645.92.

| | |
|---|---|
| Dated: January 27, 2022<br>New York, New York | Respectfully submitted,<br><br>/s/ Steven F. Molo<br>Steven F. Molo<br>Justin M. Ellis<br>Lauren F. Dayton<br>Mark W. Kelley<br>MOLOLAMKEN LLP<br>430 Park Avenue, 6th Floor<br>New York, NY  10022<br>Tel.: (212) 607-8170<br>Fax: (212) 607-8161<br>smolo@mololamken.com<br><br>Elizabeth K. Clarke (admitted *pro hac vice*)<br>MOLOLAMKEN LLP<br>300 N. LaSalle Street, Suite 5350<br>Chicago, IL  60654<br>Tel.: (312) 450-6700<br>Fax: (312) 450-6701<br><br>*Counsel for Plaintiff Red Tree Investments, LLC* |