UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

RED TREE INVESTMENTS, LLC,

                           **Plaintiff,**

              -against-

PETRÓLEOS DE VENEZUELA, S.A., et al.,

                         **Defendants.**

-----------------------------------------------------------------X

19-CV-02519 (PKC)(SN)

**REPORT AND
RECCOMENDATION**

-----------------------------------------------------------------X

RED TREE INVESTMENTS, LLC,

                           **Plaintiff,**

              -against-

PETRÓLEOS DE VENEZUELA, S.A., et al.,

                         **Defendants.**

-----------------------------------------------------------------X

19-CV-02523 (PKC)(SN)

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE P. KEVIN CASTEL:**

On January 6, 2022, the Honorable P. Kevin Castel entered judgment in favor of Plaintiff Red Tree Investments, LLC, in both above-captioned matters, for a total award of roughly $246 million. ECF Nos. 143/143.[1] Thereafter, Plaintiff moved for an award of attorney's fees and expenses in both actions, seeking a combined total of $3,177,967.00 in fees and $55,645.92 in expenses. ECF Nos. 148/149. Defendants have opposed the motion and seek a 70% across-the-

---

[1] The two dockets in this matter will be cited in parallel, with docket entries from 19-cv-02519 appearing first, and 19-cv-02523 second.

board reduction in Plaintiff's fees. ECF Nos. 175/176. I recommend that Plaintiff's motion be GRANTED in part and DENIED in part.

## BACKGROUND

The Court assumes a reader's familiarity with the underlying cases. In brief, Plaintiff commenced these actions in New York State Court by motion for summary judgment in lieu of complaint, and Defendants promptly removed them to federal court. ECF Nos. 1/1. Plaintiff sought to recover money owed to it pursuant to two note agreements (Dkt. No. 19-cv-02519) and one credit agreement (Dkt. No. 19-cv-02523).[2] It is undisputed that together these three contracts obligate Defendant Petróleos de Venezuela, S.A. to pay Plaintiff's legal fees and expenses, and Defendant PDVSA Petróleo, S.A. (collectively, the "Defendants") to guarantee that obligation. Plaintiff initially retained Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") as principal trial counsel, and Ganfer Shore Leeds & Zauderer LLP ("Ganfer") to advise about New York state procedure. In August 2020, Plaintiff ended its relationship with Quinn and retained MoloLamken LLP ("MoloLamken") as trial counsel.

## PROCEDURAL HISTORY

Defendants filed motions to stay both actions on March 27, 2019, shortly after they were removed to federal court. ECF Nos. 9/10. The Court granted a 120-day stay on May 3, 2019, in recognition of the then-developing political landscape in Venezuela and the difficulties this presented to Defendants, as state-owned companies, who had asserted a lack of access to necessary documents and personnel. ECF Nos. 33/33. Defendants' motion for an additional stay was denied on January 14, 2020. ECF Nos. 57/58. Thereafter, on February 7, 2020, Defendants filed Rule 56(d) motions seeking deferral of decision on Plaintiff's motions for summary

---

[2] Readers are referred to Judge Castel's December 22, 2021 Opinion and Order for further background. ECF Nos. 136/137.

judgment to allow Defendants to seek discovery. ECF Nos. 64/65. As those motions were being briefed, Plaintiff voluntarily produced some of the discovery sought by Defendants. ECF Nos. 68/69.

Although only Defendants' initial request for a 120-day stay was granted, the case remained designated as "STAYED" on ECF until August 21, 2020, when Plaintiff brought the error to the Court's attention. ECF 75/76. Shortly thereafter, for unknown reasons, both Plaintiff's motions for summary judgment and Defendants' Rule 56(d) motions were "terminated" on ECF, although this termination is not publicly visible. Due to these various administrative hiccups, Defendants' Rule 56(d) motions were not granted until June 1, 2021. ECF Nos. 99/100. On December 10, 2021, both matters were reassigned to Judge Castel, who then entered judgment for Plaintiff. ECF Nos. 137/138.

## DISCUSSION

Defendants do not contest the rates billed by Plaintiff's counsel or their claimed expenses. Therefore, the following analysis is limited to the number of hours billed by Plaintiff's counsel.

## I. LEGAL STANDARD

"Because a fee-shifting clause can produce perverse incentives for a litigant (and [their] attorneys), courts must scrutinize fee requests to ascertain whether they are reasonable. . . . [T]he rule in New York is that when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." Diamond D Enters. USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) (internal citations and quotation marks omitted).

To determine the reasonable number of hours required to litigate a case, courts must review an attorney's contemporaneous time records. Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015). "The district court [] should exclude from this initial fee calculation hours that were not reasonably expended." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (internal quotation marks and citation omitted). This analysis takes into consideration "overstaffing, the skill and experience of the attorneys, [and any] redundant, excessive, or unnecessary hours." Gonzalez, 112 F. Supp. 3d at 29 (citing Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)).

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." Hensley, 461 U.S. at 434; see also Farrar v. Hobby, 506 U.S. 103, 114 (1992) ("Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." (internal quotation marks omitted)). "A district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. Such a comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 96 (2d Cir. 1997) (citing Farrar, 506 U.S. at 114-15).

## II.   HOURS WORKED

The number of hours should be reduced because they are facially unreasonable, and because Quinn and MoloLamken's time records contain significant block billing. Defendants' remaining arguments, addressed below, either lack merit or concern *de minimis* issues with Plaintiff's counsel's records that do not justify the 70% reduction Defendants seek.

A.     **Facial Reasonableness**

Defendants argue that the hours billed by Plaintiff's counsel were significantly disproportionate to the needs of the case. Quinn's billing records span from January 2019 to September 2020. In that time, they billed a cumulative 2,594.3 hours, resulting in a total billing of $2,300,916.31 (inclusive of expenses). MoloLamken's records span from August 2020 to December 2021. In that time, they billed a cumulative 1,279 hours, resulting in a total billing of $957,212.01 (inclusive of expenses).

In furtherance of the Court's analysis of the reasonableness of the hours billed, it has divided the litigation into the following seven phases.

1.   **Retention Through First Motion to Stay (January 3, 2019 – March 31, 2019)**

Quinn's billing records begin on January 3, 2019, and reflect work done to prepare for and eventually file motions for summary judgment in lieu of complaint in New York State Court. Those motions, which are mostly a party declaration and the relevant agreements, were filed on February 15, 2019. ECF Nos. 3/5. On March 21, 2019, the action was removed to federal court. Defendants' first motion to stay was filed on March 27, and Plaintiff responded on March 29 with a four-page brief. ECF Nos. 13/14. During this three-month period, Quinn billed a total of 1,081.3 hours at a cost of $970,704.47 (inclusive of expenses).

2.   **Motion for Summary Judgment Restated Through Motion to Vacate Stay (April 1, 2019 – August 31, 2019)**

On April 11, 2019, Plaintiff filed a restated motion of summary judgment to address the removal of both cases to federal court. The restated motions were supported by a four-page brief and Local Civil Rule 56.1 Statements of fewer than 40 paragraphs. ECF Nos. 26/27, 27/28. During this period Quinn filed additional letters regarding the Defendants' pending motion to stay. On April 19, 2019, the Court adjourned the deadline for Defendants to respond to Plaintiff's

motion for summary judgment. On May 6, 2019, the Court ordered a 120-day stay. On August 5, 2019, Plaintiff moved to vacate the stay, and on August 26 they filed a brief in reply. During this five-month period, Quinn billed a total of 404.6 hours at a cost of $364,328.21 (inclusive of expenses).

### 3. Second Motion to Stay Through Rule 56(d) Motion Briefing (September 1, 2019 – February 29, 2020)

During this period Plaintiff filed both a preliminary letter as well as a formal opposition requesting that the Court deny Defendants' motion for a second 120-day stay. They filed additional letters requesting a conference to clarify the disputes before the Court and updating the Court on a contemporaneous ruling in a similar dispute pending before the District Court for the District of Columbia. On January 14, 2020, the Court denied Defendants' second motion to stay, and Plaintiff then filed a joint proposed briefing schedule for Defendants' Rule 56(d) motion before eventually writing in opposition to that motion. During this six-month period, Quinn billed a total of 915.7 hours at a cost of $797,708.37 (inclusive of expenses).

### 4. Stagnation and Follow-Up Letters Through Withdrawal (March 1, 2020 – September 18, 2020)

The docket reflects no activity between February 24, 2020, and May 26, 2020. After that time, Plaintiff filed multiple letters both alerting the Court that more than 90 days had passed since Defendants' Rule 56(d) motion was fully briefed, and also requesting that the case no longer be designated as "STAYED" on ECF. On September 18, 2020, Quinn moved to withdraw from both cases. During this seven-month period, Quinn billed a total of 192.7 hours at a cost of $168,175.26 (inclusive of expenses).

### 5. MoloLamken's Retention and Further Stagnation (August 11, 2020 – May 31, 2021)

MoloLamken's billing records begin on August 11, 2020, and they first appear on the Docket on September 11, 2020. On September 29, Plaintiff wrote to the Court that, although Defendants' Rule 56(d) motion was still pending, it had voluntarily produced documents in an effort to expedite the litigation and believed that the motion had been mooted. It also requested that the Court set a briefing schedule for Plaintiff's motion for summary judgment. Defendants responded to the effect that the motion was not in fact mooted and that further discovery was still required, and opposed Plaintiff's request for a briefing schedule, prompting further letters from Plaintiff through October 12.

There was then no activity until November 23, 2020, when Plaintiff again wrote to the Court, essentially asking the Court to respond to its earlier filings. Defendants responded, but the docket contains no further activity until January 25, 2021, when Plaintiff wrote to the Court that it had moved to intervene in a similar action where identical discovery was being sought by Defendants. This letter also reiterated Plaintiff's desire for the litigation to move forward, and noted that the parties' mutual conference requests in November 2020 had yet to be addressed. Again, Defendants filed a response, but there was no further activity on the docket until March 18, 2021, when Plaintiff wrote to the Court explaining that they believed Defendant's Rule 56(d) motions had been erroneously "terminated" on ECF. Plaintiff complained that as this action languished, other of Defendants' creditors were able to lay claim to their assets, and that further delay would cause Plaintiff continued substantial prejudice. Plaintiff filed a similar letter on April 6, 2021, which Defendants responded to on April 9. The docket reflects no further activity until June 1, 2021. At some point in the interim, Plaintiff petitioned the Court of Appeals for mandamus relief.

During this ten-month period, MoloLamken billed a total of 500.9 hours at a cost of $385,546.38 (inclusive of expenses).

      **6.**      **Appeal Through Summary Judgment Briefing (June 1, 2021 – October 31, 2021)**

On June 1, 2021, the Court granted Defendants' Rule 56(d) motion and extended discovery for one month, while also allowing the parties to submit a proposed briefing schedule for Plaintiff's motion for summary judgment. Thereafter, Plaintiff voluntarily withdrew its petition to the Court of Appeals. The parties briefed the issuance of letters rogatory, and Plaintiff opposed a discovery extension sought by Defendants. On August 16, 2021, Defendants filed their opposition to Plaintiff's motion for summary judgment, and Plaintiff filed their reply on August 30, 2021. The Docket reflects no further activity until November 18, 2021.

During this five-month period, MoloLamken billed a total of 650 hours at a cost of $461,166.23 (inclusive of expenses).

      **7.**      **Additional Briefing Through Summary Judgment (November 1, 2021 – December 31, 2021).**

In November, Plaintiff wrote to the Court multiple times, twice to inform it of supplemental authority in support of its motion for summary judgment, and also to alert it that more than 90 days had passed since that motion became fully briefed. On December 10, 2021, the case was reassigned to Judge P. Kevin Castel. Plaintiff wrote to the Court to emphasize the protracted nature of the litigation in both cases and request a conference. On December 22, 2021, Judge Castel granted Plaintiff's motions for summary judgment. The following day, Plaintiff filed a proposed judgment. On December 31, 2021, Plaintiff wrote requesting that the Court waive the automatic 30-day stay of the judgments.

During this two-month period, MoloLamken billed a total of 128.1 hours at a cost of $110,499.40 (inclusive of expenses).

**8.     Reasonableness**

A careful review of the records of both Quinn and MoloLamken has revealed no gross inconsistencies or otherwise implausible time entries. But the volume of hours billed by both firms (and to a greater extent by Quinn), is facially unreasonable.

The efficient pursuit of Plaintiff's claims was clearly frustrated both by administrative delays as well as by Defendants' litigation tactics. These delays, however, do not justify the nearly one million dollars in fees billed by Quinn during the first three months of this litigation, for example. Quinn claims that this extravagant use of attorney time was an intentional effort to "front-load" the litigation, but such excess continued throughout their retention. For example, Quinn billed nearly $800,000 between September 2019 and February 2020, even though their work during that time largely involved filing one 19-page brief opposing Defendants' request for an additional stay. ECF Nos. 52/52. The Court recognizes that some time was spent monitoring related cases and activities, see, e.g., ECF Nos. 56/57, but this passive oversight cannot reasonably account for an invoice of this magnitude.

Moreover, the delays caused by administrative errors and Defendants' litigation strategy do not justify the sheer number of hours billed. Plaintiff's numerous filings seeking to expedite the litigation are (reasonably enough) mostly repetitive. And while the delays undoubtedly necessitated *some* extra strategizing, planning, and client communication, the actual hours billed far exceed what is reasonable in these circumstances. Although Plaintiff achieved complete success on its claims, resulting in a large judgment, the actual litigation that occurred was relatively minimal, consisting of essentially two motions for summary judgment followed by limited discovery, a great deal of waiting, and repetitive correspondence seeking the Court's attention.

B.     **Block Billing**

Plaintiff's counsel's block billing prevented the Court from properly reviewing the attorneys' time records. Block billing occurs when an attorney groups multiple tasks into a single billing entry. Hines v. City of Albany, 613 F. App'x 52, 55 (2d Cir. June 3, 2015). This type of billing is permissible, but only when the records "allow the court to conduct a meaningful review of the hours requested." Restivo v. Hessemann, 846 F.3d 547, 591 (2d Cir. 2017) (citing Merck Eprova AG v. Gnosis S.P.A., 760 F.3d 247, 266 (2d Cir. 2014)). Block billing is problematic where "large amounts of time (*e.g.* five hours or more) are block billed." Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015).

Quinn utilized block billing throughout its time records, which span from January 2019 to September 2020. See ECF Nos. 176/177, Ex. A-C. Most notably, on 168 different occasions, Quinn combined 5 or more hours of work, usually on multiple tasks, into a single time entry, without specifying the time spent on each task. Id. Of those 168 occasions, Quinn blocked-billed 10 or more hours of work 32 times (with three of *those* entries attributable to partner Daniel Salinas at a rate of $1,000 per hour). Id.

MoloLamken's time records span from August 2020 to December 2021. See ECF Nos. 176/177, Ex. D-E. MoloLamken block-billed for 5 or more hours of work on a comparatively modest 46 occasions. Id. Of those 46 entries, 5 were for 10 hours or more. Id.

The use of such large "blocks" prevents the Court from conducting a "conscientious and detailed inquiry" into a significant portion of the alleged hours. See Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); Trinidad v. Pret a Manger (USA) Ltd., No. 12-cv-6094 (PAE), 2014 WL 4670870, at *10 (S.D.N.Y. Sept. 19, 2014) (reducing fee award based on block-billed entries covering as many as 16 hours); Charles v. City of New York, No. 13-cv-3547 (PAE),

10

2014 WL 4384155, at *6 (S.D.N.Y. Sept. 4, 2014) (reducing fee award based on block-billed entries spanning more than six hours each).

### C. Vague Time Entries

Courts may reduce an attorney's requested fees when the billing entries are vague and do not sufficiently demonstrate what counsel did. Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) (citations omitted). A billing entry is "vague" if it "lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed." Handschu v. Special Servs. Div., 727 F. Supp. 2d 239, 250 (S.D.N.Y. 2010).

Defendants argue that vague time entries justifying their requested reduction in fees may be found throughout both Quinn and MoloLamken's invoices. As examples, Defendants point to MoloLamken entries labeled "Review emails and consider strategy" and "Emails re: strategy." ECF Nos. 176/177, Ex. E at RT_19364. They also point to a recurring entry in Quinn's records labeled with some variation of "Emails with QE team re: various issues." ECF Nos. 167/177, Ex. A at RT_19485, RT_19492-94, Ex. B. at RT_19548.

While these entries are certainly vague in a linguistic sense, the Court is unconvinced that they are problematic. The entries cited by Defendants are for short increments of time, nearly exclusively for less than one hour, and this is consistent throughout the records of both firms. Entries for more substantial blocks of time—including the block billing discussed above—contain significantly more detail. Therefore, the Court does not find that the entries cited, and others like them, lack enough specificity for the Court to determine their reasonableness. To use one of Defendants' examples, on February 2, 2021, MoloLamken partner Steven Molo billed three-tenths of an hour under the entry "Emails re: strategy." While that entry is certainly vague, the Court needs no further detail to assess the reasonableness of that allocation of time.

11

Moreover, the fact that these entries represent a relatively small fraction of the total hours billed weighs against Defendants' requested 70% reduction.

**D.      Alleged Redundancies**

Defendants also take issue with Plaintiff's choice to substitute Quinn with MoloLamken and claim that Plaintiff is not entitled to recover "redundant" fees associated with this change (i.e., the time MoloLamken spent "catching up").

While there are time entries associated with the change in counsel that are in some sense "redundant," they account for an extremely small portion of the fees sought. Plaintiff argues that these entries total only $20,000, and without crediting that number or making a more exhaustive inquiry, the Court notes that MoloLamken's total billing for the first three months of their involvement in this case, the vast majority of which is clearly not "redundant," was $166,644.88. Whatever portion of that figure is attributable to Plaintiff's decision to replace its counsel, it does not motivate the Court to reduce Plaintiff's requested fees to the extent requested. More importantly, Defendants fail to cite any authority stating that fees associated with a change in counsel are *per se* unreasonable, nor is any argument advanced that it was imprudent for Plaintiff to make such a change.

Defendants also fault Plaintiff for retaining Ganfer and claim that Quinn was more than capable of advising on matters of New York procedure. But as Plaintiff notes in reply, Ganfer charged significantly *less* for its services that Quinn, and to the extent that Defendants believe the work done by Ganfer was unnecessary entirely, it accounts for a mere $71,074, just over 2% of the total fees sought.

E.  **Defendants' Attorney Fees**

Apart from the redundancies discussed above, the main thrust of Defendants' objection to the fee award is that Plaintiff's counsel's fees are significantly higher than those of Defendants' attorneys, which totaled $1,039,022.72 (inclusive of costs).

The only support offered by Defendants is a non-controlling case that went to great lengths to stress that such a comparison is relevant but "not controlling or otherwise outcome determinative of the question of what [fees are reasonable]" before ultimately ordering a 20% reduction in hours. James v. Nat'l R.R. Passenger Corp., No. 02-cv-03915 (RJH), 2005 WL 6182322, at *14 (S.D.N.Y. Mar. 28, 2005).

Defendants have no good answer to why the amount they paid to lose should limit the amount Plaintiff paid to win. This question is particularly apt where Plaintiff was seeking an extremely large judgment, the actual collection of which was made more urgent by political externalities and others pursuing similar claims against Defendants. Defendants, in contrast, had a motive to spend as little money as possible defending against claims they were likely to lose, and their litigation strategy, sensibly, seemed to center around delaying the proceedings for as long as possible. These delays created more work for Plaintiff's counsel, including opposing both motions for stays.

F.  **Fees Paid by Similarly Situated Parties**

Defendants cite two instances in which they were successfully sued by parties on similar claims and stipulated to much lower awards of attorney's fees. See Cimontubo – Tubagens E Soldadura, LDA v. Petróleos De Venezuela, S.A., No. 20-cv-05382 (GBD), 2021 WL 5567496 (S.D.N.Y. Nov. 29, 2021); Dresser-Rand Co. v. Petróleos De Venezuela, S.A., 439 F. Supp. 3d 270 (S.D.N.Y. 2020). In Cimontubo, Plaintiff's counsel secured a judgment of roughly $48

13

million at a cost of $124,533.35. In Dresser-Rand, Plaintiff's counsel billed roughly $1.6 million in costs and fees in the process of securing a $166 million dollar judgment. Defendants note that the latter case included a bench trial and argument before the Court of Appeals. Plaintiff offers in rebuttal that the former case took only eight months to move from filing to a decision on summary judgment, and that the latter, while admittedly more complex in substance, lacked the procedural and administrative difficulties presented by this case.

While the cases cited by Defendants are persuasive, Plaintiff also notes, correctly, that fees paid by a sophisticated client, like Red Tree, are entitled to a presumption of reasonableness. Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). It follows that one reasonable client may be willing to pay significantly more for representation than another equally reasonable client. And Defendants cite no authority that would preclude Plaintiff from choosing to pay a premium for counsel of their choice and an aggressive litigation strategy.

### G. The Appropriate Percentage Reduction

Courts may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (S.D.N.Y. 1998) (quoting New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)). Such reductions may reflect the reviewing court's decision that "billing records were not sufficiently detailed, contain inappropriate block billing, and/or that matters were overstaffed." Centro de la Comunidad, 2019 WL 2870721, at *7. A court need not "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday, 42 F.3d at 134. Depending on the facts of a case, an across-the-board reduction can range from 15% to 50% or more. See Simmonds, 2008 WL 4303474, at *7-9 (reducing a fee request by 55% to account for duplicative work and ambiguities in the billing records); Matusick v. Erie County Water

Auth., 757 F.3d 31, 64 (2d Cir. 2014) (upholding 50% reduction in light of concerns regarding "unspecified conferences, telephone calls, email correspondence, and reviews"); Francois v. Mazer, 523 F. App'x 28, 29 (2d Cir. June 25, 2013) (affirming a 40% reduction in hours); Vista Outdoor Inc. v. Reeves Family Tr., No. 16-CV-5766 (JSR), 2018 WL 3104631, at *7–9 (S.D.N.Y. May 24, 2018) (excluding fees associated with the time entries of four attorneys and applying a 35% reduction for all remaining attorney hours); Beastie Boys, 112 F. Supp. 3d at 57 ("Fee reductions around 30% are . . . common in this District to reflect considerations of whether work performed was necessary, leanly staffed, or properly billed.").

The Court has conducted a thorough review of the time records produced by Plaintiff's counsel and has not found any notably improper or implausible entries. That said, the sheer amount of time billed for a case that did not go to trial or involve extensive discovery or motion practice, even in light of the administrative hurdles encountered by Plaintiff, and their total success, is indulgent to the point of being unreasonable. Counsel's use of block billing also calls into question the precision and conscientiousness of their timekeeping practices. I recommend an across-the-board reduction of MoloLamken's fees by 15%. Because Quinn's hours are facially more unreasonable and its use of block billing more pervasive, I recommend an across-the-board reduction of its fees by 30%.

## CONCLUSION

The Court recommends GRANTING in part and DENYING in part Plaintiff's request for attorney fees and expenses. Plaintiff's award should reflect a 30% reduction in the fees charged by Quinn, and a 15% reduction in those charged by MoloLamken.

_____
SARAH NETBURN
United States Magistrate Judge

DATED: New York, New York
November 29, 2022

\*     \*     \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Castel. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).